R. J. MILLSAPS *v.* REBECCA McCORMICK and another.

An obvious and palpable mistake, which a Court would correct of course on motion, needs no correction and may be disregarded.

The burden of proving an affirmative defence is on the party who makes it. Therefore, it is necessary for the heirs to prove, that their possession of certain land, outside of the dower, was adverse to the plaintiff who claimed under a Sheriff's deed, when they allege such a fact.

CIVIL ACTION for the recovery of real property, tried before *Clarke, J.*, at the Special (January) Term, 1874, of ROBESON Superior Court.

All the facts relating to the points decided are fully stated in the opinion of the Court.

*Leitch* and *N. A. McLean*, for defendant.
*N. McLean* and *McKay*, for the plaintiffs.

RODMAN, J. The plaintiff claims the land in controversy under a sale by the sheriff of Robeson county, under an execution from the County Court of that county, at the instance of McLean against John McCormick, the father of the defendants. The sale was 22d of August, 1842. Jacob Blount became the purchaser and the sheriff made a deed to him, the sufficiency of which is one of the questions made on this appeal. The deed is dated 20th September, 1842. The particular matter in which it is alleged to be insufficient will be stated hereafter.

It does not appear when or how the plaintiff obtained the title of Blount, but it seems not to have been questioned on the trial that he had obtained it. As the case discloses no question on this point, we assume that none was made below.

John McCormick, the ancestor of defendants, died after the teste and before the return day of the execution, and the sale was before the return day. It does not appear, therefore, to have been irregular.

Among the exhibits attached to the record is a return by the sheriff, that on the 22d of November, 1842, he assigned dower in the lands of the said John McCormick to his widow Milly, who, it was proved, died shortly before the commencement of this action, which was on 4th of February, 1873.

It does not appear that this report was ever confirmed by the County Court. But as no question was made on that point, we assume that the assignment of dower was regular.

The plaintiff proved that the widow and the defendants had lived upon the land ever since the death of John McCormick in 1842.

The defendants, by their answer, alleged that they had held and occupied the lands described in the complaint since 1842, adversely to the plaintiff, and that he was thereby barred of a recovery.

It is not stated anywhere in the record, and it seems not to have been in evidence upon the trial below, whether the defendants occupied the part of the land assigned to the widow for dower only, or that and the residue also.

The defendants requested the Judge to charge the jury:

1. That the deed from the sheriff was insufficient to convey the estate of John McCormick to Blount.

2. "And that having failed to prove that defendants were occupying the premises within the lines of the dower land, that this possession was adverse to that of the plaintiff, and being barred by lapse of time, the plaintiff could not recover."

The Judge declined so to charge. The instructions which the Judge did give the jury are not set forth, and as the appellant makes out the case, it must be presumed that there could be no exception taken to the instructions given, except that they did not contain those asked for and declined.

The jury found a verdict for plaintiff for the whole of the land included in the sheriff's deed.

1. As to the first point respecting the sufficiency of the sheriff's deed:

The deed is in the usual form except as presently stated.

It recites the judgment, execution, sale and purchase by Blount, and the payment of the price by him, and then conveys to him and his heirs " all the right, title, claim and demand *of him the said John A. Rowland, sheriff,* in the lands aforesaid, lying and being," &c., describing the lands.

The argument for the defendant is that the estate of their ancestor, John McCormick, was not conveyed.

The meaning of a deed is to be gathered from the whole of its language, and we think that, considering the recitals, it must be evident that the sheriff intended to convey, not his own estate, which was confessedly nothing, but that of the defendant in the execution, McCormick, and that his own name was inadvertently and by mistake written for that of McCormick.

The deed of a sheriff is in execution of a power given to him by the process of the Court. It must be, therefore, under the control of the Court.

It cannot be doubted that if this mistake had been discovered during the life time of the sheriff, and before he went out of office, it could have been corrected by him, and that the County Court of Robeson would have compelled him to give the purchaser a deed correct in form.

The act of 1838, Rev. Code, ch. 37, s. 30, provides that if a purchaser at a sheriff's sale fails to get a deed before the sheriff who sells goes out of office, the sheriff may make it afterwards; and that if the sheriff dies or goes out of the State, his successor may make the deed. *Isler* v. *Andrews,* 66 N. C., 552. It would seem to be clear, therefore, that if the present deed is defective, the successor of the sheriff who executed it, could be compelled by the Superior Court of Robeson to execute a new deed to the purchaser. It follows that the Court can now correct this deed, and no reason is seen why it could not have corrected, it on motion during the trial of this suit.

An obvious and palpable mistake which a Court would correct of course on motion, needs no correction, and may be disregarded.

We think the Judge was justified in declining the instruction requested respecting the sheriff's deed.

2. As to the proof of adverse possession.

The instruction asked by defendants, assumes that inasmuch as the plaintiff having shown that the defendants were in possession of some part of the premises when the action began, (as he was bound to do,) and not having shown that they had not been in possession of the part outside the dower limits since 1842, it was to be presumed that they had been in such possession.

Clearly there had been no adverse possession of the dower land for twenty years. The possession of the widow, and of her children living with her by her consent, was consistent with the title of the plaintiff, and not adverse during her life.

As to the rest of the land. The burden of proving an affirmative defence is on the party who makes it. Here the defence of the heirs was an adverse possession of this land by the heirs for twenty years. The burden was on them to prove that they had so possessed this part of the land.

The occupation by the widow of any part of her dower land, was an occupation of the whole of that but of no more ; and so of the occupation of any one else under her, it could not extend *by construction of law* beyond her dower lines. If in fact it extended beyond those lines, it was a distinct possession adverse to the plaintiff which, if continued long enough, might have ripened into a title. But it was for the defendants to prove the fact of the possession affirmatively, and not for the plaintiff to disprove it.

We see no error in his Honor in declining to give the instructions asked for.

PER CURIAM.                              Judgment affirmed.