The following are the material facts relating to the question raised at this stage of the proceedings and decided at this term of the Court:
The plaintiff in September, 1869, subscribed for fifteen shares of stock in the defendant Association. On the 6th of October following, he obtained, by way of loan as he alleges, from the Association the sum of $1,366, by having ten shares of his stock redeemed, (as it is technically expressed in the transaction of the Association,) at $91.60 per share, and five other shares redeemed at $90 per share. To secure the payment of this amount of $1,366, he and the feme plaintiff, his wife, executed a mortgage to certain trustees, who afterwards assigned it to said Association, upon real estate in the city of Wilmington, worth $3,000.
The defendant admits that the $1,366, the sum advanced to the plaintiff for the redemption of his fifteen shares of stock, which the said Association allege was no loan, but a sale, was secured in said mortgage to be repaid; charging, however, that *Page 373 
such condition was therein inserted through a mistake, and in violation of the Constitution and By-laws, and asking that the said mortgage be so reformed as to make it conform to the Constitution and By-laws.
Among many other allegations, not relevant to the question argued and decided in this Court, the plaintiff states that he has already paid $1,755.31, a sum more than sufficient to pay off and discharge the said mortgage, with all the lawful interest thereon accrued.
On the 12th of December, 1874, the plaintiff obtained from Chief Justice PEARSON an order restraining the defendant Association from selling the real estate conveyed in the mortgage, as it had advertised to do, until the hearing of the cause before Judge McKOY, at Wilmington; at the same time ordering the defendant to appear at such time and place as Judge McKOY should appoint. In obedience to the order, the plaintiff and the defendant Association appeared before Judge KERR at Chambers in New Hanover county, on the 6th day of March, 1875, when after argument, his Honor vacated the restraining order and refused to grant the injunction prayed for, whereupon the plaintiffs appealed.
The defendant was incorporated by an act ratified March 26th, 1870, Private Laws of 1869-'70, chap. 93, page 154. Section 2 of the act fixes the par value of stock at $200 per share, and limits them in number to 6,000 or less, and then provides: The corporation may, according to such rules and regulations to be provided in its by-laws, redeem or purchase the shares, or any number thereof, held by its stockholders, at such prices as may be agreed, and on payment of such price, may take from the stockholders a mortgage on real estate to secure the instalments remaining unpaid on the shares so redeemed or purchased, together with interest at a rate not exceeding *Page 374 
6 per cent. per annum on the par value of the same, and also all such fines and penalties as may be prescribed by the by-laws for the non-payment, punctually, of such instalment and interest, and such mortgage, and the debts secured thereby, shall be exempt from taxation, the property being taxed in the hands of the mortgagor.
The defendant having paid a small sum in monthly instalments, redeems, that is, accepts a sum payable now in place of a larger sum accumulating under its operations and to be paid in the future. He thus anticipates what he would be entitled to as a shareholder upon the consummation of the purposes of the Association and when its profits will admit of a par payment. It is in no sense a loan, and there is no contract for the repayment of the moneys received upon such sale or redemption, and the stockholder's obligation to continue his monthly payments remains unimpaired as before, except that he must pay at the rate of 6 per cent. per annum the monthly interest on the par value of the stock redeemed. This is expressly authorized by the charter in the section quoted.
To secure these continuing obligations, the mortgage required and executed in conformity to the act, expressly recites that as a condition of the payment or redemption of his stock, such shareholder must still "pay to the association monthly, and every month during its continuance, on the days appointed by the said association for such payment, one half of one per cent. on the ultimate or par value of the said shares so redeemed by way of interest; and will "pay regularly, on the days appointed by the said association for such payment, the monthly dues on the shares held by him in said association, whether the same be redeemed or not;" and will "pay all such fines as may be incurred by any default on his part in making the payments aforesaid at the time aforesaid," c., c.
It further provides, "that in the event that default shall be made by him in the payments to be made as aforesaid, or any one of them for the space of three months, or in the other conditions, stipulations and requirements above set forth, or either *Page 375 
of them, in conformity with the provisions of the constitution of said association, that then, and in that event, he or his legal representatives will cause to be paid to the parties of the second part, as trustees of said association, the sum of $252, with interest from the date of these presents."
The proviso declares the deed shall become void if the bargainor comply with "all terms, requirements and conditions on which said sum of $252 was advanced," "or in the event of any default in complying with and performing the same, he shall "pay said sum of $252, with interest from the date hereof." And in case of sale, the proceeds shall be applied to the payment of "the principal and interest of the sum advanced," and all costs and charges incident to said sale, and conveyance, and all fines and monthly dues then remaining unpaid," and the surplus, if any, returned to the bargainor.
It is thus plain that the sum advanced in redemption of stock is but an anticipation of a payment at par value, at a future uncertain time, and in no sense a loan; and it is accepted on the terms that the monthly investment and monthly interest on the sum constituting the par value of the stock, as well as fines, must continue to be paid thereafter as the consideration of such anticipated payment.
If the provisions of the mortgage deed are carried out, that money is never repaid, and the more rapidly the general fund is increased by these means, the sooner will these monthly payments cease and the party be exonerated therefrom.
That the transaction is not usurious, is manifest from the absence of any element of a loan, and is so understood and adjudicated in many cases.
The members of a society raised a fund which was from time to time loaned to its members with legal interest, and such loans were put up to the bidder who would pay the largest sum for the loan, in addition. This is not usury. Silver v. Barnes, 37 Eng. Com. Law Rep., 571.
Similar associations to ours exist in England, and transactions of the kind complained of in this action have been held. *Page 376 
valid. Burbidge v. Colton, 8 E. L. and Eq., 57; Seagrave v. Pope, 15 En. L. and Eq. Rep., 477; Flemming v. Self, 27 En. Law and Eq. Rep. 491; Mosely v.Baker, following the case preceding, at page 512. And in New York, CitizensMutual Loan Association v. Webster, 25 Barbour, (N. Y.) 263; see alsoFranklin Benefit Association v. Musk, 5 Dutchers (N. J.) Rep. 225; in Maryland, Shannon v. The Howard Mutual Benefit Association, 36 (Md.) Rep., 383; McCohen v. Colored Building Association of East Baltimore, 40 (Md.) Rep. 226.
The provisions of this charter are in substance the same as those in the general law enacted in regard to Building Associations. Bat. Rev. ch. 12.
It is true it was held usurious to effect a loan even in this way under the general law of Pennsylvania. But this decision was not an application of the general act forbidding usury to the transaction of an Association having not the special sanction of law to its acts. Rupfert v. Guttenburg,Building Association, 6 Casey (Penn.) Rep. 465; but this decision was immediately corrected by a law authorizing such operations under which it is said, there are now some 400 of these Associations in the City of Philadelphia alone. The act was passed in 1859, the decision made in 1858.
The act of incorporation cures old objections to the operations under a voluntary association, and such legislation is valid. Cooley Cons. Lim. 369, et. seq. defective appointment of trustee. Etheridge v. Vernoy,71 N.C. 184, and various cases remedying defects in jurisdiction of courts.
Thus an act curing defect in private examination of a feme covert, which would have made the deed inoperative was held valid. Watson v. Mercer, 8 Peters, Rep. 88. There is no ground laid for interference of the Court as whatever error may exist, there was absent every element of mala fides.Turner v. Navigation Company, 2 Der. Eq. 236.
An error which would be corrected at the hearing will now be disregarded, and the case proceeded with as if corrected. Millsaps v.McCormick, 71 N.C. 531. *Page 377 
The complaint alleges, among other things, that the mortgage deed secures the re-payment of $1,366, the sum advanced to plaintiff for the redemption of his stock. The answer admits this fact, and admits further, that it was a violation of the charter and by-laws of the Association to include this sum in the mortgage. It then alleges that the mortgage was so drawn by the mistake of the draftsman, and prays to have the deed reformed by making it conform to the constitution and by-laws.
His Honor, without disposing of the question of reforming the mortgage deed, refuses to grant the injunction. In other words, he vacates the restraining order, and permits the defendant to sell under a deed which, by the admission of the defendant, covers too much, and is in violation of the charter and by-laws of the Association.
There is error. Order reversed and cause remanded, to the end that an injunction issue, as prayed for in the complaint, and continued until further order, and to the end that the pleadings may be so amended as to present an issue of fact to be tried by a jury, under instructions by the Court, to the effect following:
"Was the mortgage deed mentioned in the pleadings drafted so as to include the sum paid to the plaintiff by the defendant, as the price of the redemption of his stock, by accident, mistake or by ignorance of the draftsman? Or, was the mortgage deed, mentioned in the pleadings, drafted so as to include the sum paid by the plaintiff to the defendant as the price of the redemption of his stock, by design and on purpose and with the privity and knowledge of the defendant, and with a view to oppression and wrongful exaction?"
A verdict upon this issue will enable the Court to see whether themortgage deed comes under the rules in regard to the correction and reforming deeds, or under the rules in regard to declaring deeds void for fraud and circumvention.
The case may thus be disposed of upon the matter of the mortgage deed; but should the verdict be that the deed was *Page 378 
made to include too much, by accident, mistake or the ignorance of the draftsman, and the deed be reformed, so as to conform to the charter and by-laws, then the general question, which was argued with much earnestness: Are these Associations a swindle and a means of deluding and cheating ignorant mechanics, which the Courts have power to suppress, as contended for by plaintiff's counsel, or are these Associations bona fide, and a means of enabling poor mechanics to borrow money and pay it back by small monthly instalments, so as to ease and favor him, by fitting the payment of interest and dues to what may suit his convenience? And, in the second place, suppose the mechanic comes in, according to the charter and by-laws, and indirectly borrows money from the Association at the rate of 25 per centum, must be abide the consequences or, in the face of the charter of the Association, have the Courts power to interfere?
Upon this general question we are not now at liberty to express an opinion.
Error. Let this opinion be certified. Remanded.
PER CURIAM. Order reversed.